UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RANDAL M. RUSSELL,

     Plaintiff,

v.

BAC HOME LOANS SERVICING, L.P.
f/k/a COUNTRYWIDE HOME LOANS
SERVICING, L.P., a California Limited
Partnership; FEDERAL HOME LOAN
MORTGAGE CORPORATION; and
ROBERT AGUILAR;

     Defendants.

CIVIL NO. SA-14-CA-480-FB

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Fred Biery
      Chief United States District Judge

Pursuant to the order of referral in the above-styled and numbered cause of action to the

undersigned United States Magistrate Judge[1] and consistent with the authority vested in United

States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local

Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of

Texas, the following report is submitted for your review and consideration.

---

[1] Docket no. 7 (Apr. 8, 2014).

## I.  JURISDICTION

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") removed the original petition of Randal M. Russell ("plaintiff") pursuant to 28 U.S.C. §§ 1331, 1442, and 12 U.S.C. § 1452(f).[2]

## II.  SUMMARY OF PROCEDURAL HISTORY AND PLAINTIFF'S CLAIMS

**A.  Procedural History**

Plaintiff initiated this proceeding in state court on December 2, 2013, when he filed his original petition in the 438th Judicial District Court, Bexar County, Texas, in cause number 2013-CI-19642, naming a single defendant: "BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. A California Limited Partnership" ("BAC").[3]  The original petition was filed by plaintiff's then-attorney of record, Alexander S. Roig.[4]  Plaintiff's case concerns the foreclosure of residential real property located at 8622 Tanbark Drive, San Antonio, Texas 78240 (the "Property").[5]  On April 29, 2014, plaintiff filed his first amended petition in state court adding Freddie Mac as a defendant.[6]  The first amended petition also was filed by Mr. Roig on behalf of plaintiff.[7]  On May 14, 2014, plaintiff filed his second amended petition in state court[8]

---

[2]  Docket no. 1 at 2.

[3]  Id., exhibit 1 at 4-11 ("original petition").

[4]  Original petition at 7.

[5]  Docket no. 1, exhibit 1 at 19 ("first amended petition").

[6]  First amended petition at 1.

[7]  Id. at 7.

[8]  Docket no. 1, exhibit 1 at 36-56 ("second amended petition").

dropping BAC as a named party defendant, asserting claims against BAC's successor, "Bank of America NA" ("BANA"), continuing to assert claims against Freddie Mac, and adding Robert Aguilar as a defendant.[9]  The second amended petition indicates that it was filed by an added attorney for plaintiff, Kenneth E. Grubbs.[10]

On May 27, 2014, Freddie Mac removed plaintiff's case to this Court.[11]  The same day, Freddie Mac served a copy of the notice of removal on Mr. Roig and the Clerk of the District Court of Bexar County, Texas.[12]  On the following day, May 28, 2014, plaintiff represents he filed a third amended petition in state court.[13]  The third amended petition is unsigned, it contains no verification, and it indicates that it was prepared by Mr. Grubbs on behalf of plaintiff.[14]

---

[9]  Second amended petition at 1-2.

[10]  Id. at 20.  Both the second amended petition and its attached verification included with the notice of removal are unsigned.  Id. at 20, 21.  Defendants state:

> Plaintiff filed his First Amended Petition on April 29, 2014, which added Freddie Mac as a Defendant in this case.  Plaintiff attempted to file a Second Amended Petition on May 14, 2014, which was obtained by Defendant Freddie Mac from the Bexar County District Clerk's office and filed with this Court as an exhibit to Freddie Mac's Notice of Removal.  See Doc. No. 1-1 at 36.  However, the Second Amended Petition filed with the Bexar County Clerk's Office and obtained by Freddie Mac was not signed by Plaintiff's new attorney and not sworn to by the Plaintiff.  See Doc. No. 1-1 at 55-56.  Subsequent to Freddie Mac's removal of the case to this Court, Plaintiff's new counsel has provided Defendants with an executed copy of Plaintiff's Second Amended Petition that also purports to have been filed with the Bexar County Clerk's Office on May 14, 2014.  See Second Amended Petition, attached hereto as Exhibit A.

See docket no. 4 at 1-2, n.2

[11]  Docket no. 1 at 1-2.

[12]  Id. at 4.

[13]  Docket no. 9 at 1, exhibit 1 ("third amended petition").

[14]  Third amended petition at 20.

On June 3, 2014, BANA and Freddie Mac (collectively, at times, "defendants")[15] filed a motion to dismiss all claims against them on the basis that plaintiff failed "to state any cognizable claim for relief" pursuant to federal Rule 12(b)(6)[16] and memorandum of law in support.[17]  On June 5, 2014, Mr. Roig filed a motion to withdraw as attorney in charge for plaintiff.[18]  On June 13, 2014, plaintiff filed a motion to extend the deadline to respond to defendants' motion to dismiss.[19]  On June 17, 2014, Chief Judge Biery granted plaintiff's motion for an extension of time and required plaintiff to file his response to defendants' motion to dismiss on or before July 1, 2014.[20]  On June 26, 2014, Chief Judge Biery granted Mr. Roig's motion to withdraw.[21]

---

[15]  The record does not reflect that defendant Robert Aguilar has made an appearance in the case, either in state court or this Court.

[16]  Docket no. 3.

[17]  Docket no. 4.  Defendants' memorandum of law observes:
The claims and allegations contained in both the First Amended Petition and Second Amended Petition are substantially similar as to BANA and Freddie Mac.  Plaintiff's Second Amended Petition further adds a new defendant, "Robert Aguilar, 15000 Surveyor Blvd., Ste. 100, Addison, TX 75001."  Out of an abundance of caution, Defendants submit their Motion to Dismiss and address all claims raised in either the First Amended Petition or Second Amended Petition.
Id. at 1-2, n.2.

[18]  Docket no. 5.

[19]  Docket no. 6.

[20]  Docket no. 7.

[21]  Docket no. 8.

On June 27, 2014, plaintiff filed a motion for leave to amend his complaint,[22] attaching a copy of his proposed fourth amended complaint.[23]  On July 3, 2014, defendants filed a response to plaintiff's motion for leave to amend.[24]  On July 10, 2014, plaintiff filed a reply in support of his motion for leave to amend.[25]

The CM/ECF record of all docket entries in this case does not show plaintiff filed any response, denominated as such, to defendants' motion to dismiss.  But, plaintiff represents that "this amendment legitimately moots the motion" to dismiss.[26]

On August 13, 2014 the Court entered an order directing the removing party, Freddy Mac, to file a copy of the state court docket sheets as a supplement to its notice of removal.[27]  On the same day, Freddie Mac filed a copy of the state court docket sheets.[28]

**B.     Plaintiff's Claims**

As discussed in a following section, a threshold question presented is whether plaintiff's second amended petition or third amended petition was plaintiff's "live" pleading at the time of removal.  For the reasons discussed in a following section of this report, the Court finds plaintiff's second amended petition was plaintiff's "live" pleading at the time of removal and is

---

[22] Docket no. 9.

[23] Id., exhibit 4 ("fourth amended complaint").

[24] Docket no. 10.

[25] Docket no. 11.

[26] Docket no. 9 at 3.

[27] Docket no. 13.

[28] Docket no. 14.

plaintiff's "live" pleading.  Nevertheless, in the interest of presenting a comprehensive report to Chief Judge Biery and the parties, this section summarizes the key averments in both plaintiff's second and third amended petitions.

### 1.      second amended petition

Plaintiff's second amended petition alleges that on September 10, 2007, plaintiff purchased the Property, executing a note and a deed of trust in connection with the purchase, and that Mortgage Electronic Registration System ("MERS") is listed as a beneficiary of the deed of trust.[29]  Plaintiff alleges that on December 20, 2011, a document titled "Assignment of Deed of Trust" ("assignment") was filed purporting to transfer the deed of trust from MERS to BANA.[30] Plaintiff alleges that the signature of MERS's representative, Martha Munoz, on the assignment is a stamped signature, but "[t]he notary section of the document . . . indicates . . . Mrs. Munoz personally appeared and signed the document," an inconsistency that demonstrates a "violation of the Texas Property Code" making "the document void" and rendering BANA without "authority to foreclose."[31]  Plaintiff alleges that "in 2011 the Plaintiff did fall behind on the Mortgage," entered into an "in house" loan modification agreement with BANA ("modification agreement"), but in September of 2012, plaintiff "suffered another set back at his job and began to fall behind on the modification."[32]  Plaintiff alleges "[a] notice to cure was sent on September 28, 2012," after which time he applied for a loan modification under the Federal Home Affordable

---

[29]  Second amended petition at 2-3.

[30]  Id. at 3.

[31]  Id.

[32]  Id. at 4.

Modification Program ('HAMP'), but BANA denied his application on November 27, 2012.[33]
Plaintiff alleges he still was attempting to obtain a HAMP loan modification when BANA sent a
second notice to cure on May 13, 2013, and a notice of acceleration on October 25, 2013.[34]

Plaintiff alleges the foreclosure sale occurred on December 3, 2013, but it was not until
January 10, 2014, that he received notice that BANA was terminating his HAMP application.[35]
Plaintiff alleges the substitute trustee's deed lists Freddie Mac as the buyer, but the substitute
trustee's deed contains incorrect information because it lists BANA as "both the Servicer and the
Holder" (when previously BANA had asserted it was only the servicer) and it "states that the
home was sold to the highest bidder, not that the holder bid in the debt."[36]  Plaintiff alleges that
Mr. Aguilar, the substitute trustee, failed in his duties to plaintiff: not to sell the Property "to a
party who was actually the holder and not just a buyer at the auction;" to "pull the foreclosure
sale when [he] failed to verify that the bank had provided a Plaintiff (sic) opportunity to try
HAMP modification loan (sic);" and "to verify that the bank provided other loss mitigation
options[.]"[37]

---

[33]  Id.

[34]  Id.

[35]  Id. at 4-5.

[36]  Id.

[37]  Id. at 5.  Again, plaintiff concedes the foreclosure sale of the Property occurred on
December 3, 2013, and elsewhere alleges he obtained a TRO to prevent the sale the day before,
December 2, 2013, but, as summarized below, the second amended petition does not appear to assert
a claim for damages based on the sale in purported violation of the TRO.

Although the remainder of plaintiff's recitation of facts in his second amended petition is extremely confusing, the second amended petition appears to allege: (1) Mr. Aguilar's activities constitute a violation of an April 13, 2011 consent order between BANA and the United States Department of Treasury, Office of the Comptroller of the Currency ("OCC consent order") regarding loan modification options for homeowners;[38] (2) BANA had a duty to monitor Mr. Aguilar to ensure compliance with the OCC consent order, but failed;[39] (3) BANA agreed in the OCC consent order to comply with HAMP guidelines, remedy unauthorized foreclosures, "provide each borrower with the opportunity to apply for loss mitigation" and render " a final decision . . . on a reasonable basis and . . . communicate [the decision] to the borrower before foreclosure;"[40] (4) BANA's failure to comply with these agreements "constitute material misrepresentations . . . [to] Plaintiff concerning how they (sic) would handle [plaintiff's] modification process . . .;"[41] and (5) paragraphs 19 and 22 of the deed of trust require BANA to offer a HAMP loan modification to plaintiff, for which plaintiff was qualified, but BANA improperly denied his application.[42]

---

[38] Id. at 5-6.

[39] Id. at 6.

[40] Id. at 6-7.

[41] Id. at 7-8

[42] Id. at 8-13.

8

Based on the foregoing allegations, plaintiff asserts three causes of action against BANA and/or Freddie Mac:[43] (1) breach of contract against BANA, based on BANA's alleged failure to (a) provide plaintiff a notice of default or opportunity to cure, or (b) modify the loan agreement through HAMP or other foreclosure alternatives;[44] (2) "Declaratory Judgment" against all defendants, seeking a declaration that (a) BANA "was estopped from foreclosing" under the OCC consent order, and (b) defendants failed to provide the proper notices and comply with the plaintiff's "right to reinstate" the mortgage loan;[45] and (3) "Action to Quiet Title" against BANA only, based on the allegation that the substitute trustee's deed is "void or voidable."[46]  Plaintiff seeks injunctive relief, attorneys fees, damages, pre-judgment and post-judgment interest, and costs.[47]

### 2.    third amended petition

Plaintiff's third amended petition is virtually identical to plaintiff's second amended petition, with two key additional averments: (1) on December 2, 2013, plaintiff obtained a temporary restraining order prohibiting the sale of the Property, but the Property was sold on

---

[43] To be clear, plaintiff's second amended petition also asserts a claim for negligence against Robert Aguilar only, id. at 15-16, as well as a claim for declaratory judgment against Mr. Aguilar, id. at 17.   But, movants are BANA and Freddie Mac, not Mr. Aguilar, who has not yet appeared in the case.

[44] Id. at 14-15.

[45] Id. at 17.

[46] Id. at 17-18.

[47] Id. at 19.

December 3, 2013; and (2) the sale was void as a violation of the temporary restraining order.[48]

In a section titled "Requests for Temporary Restraining Order and Injunction," plaintiff adds, as a

basis for relief, that "the foreclosure occurred in violation of a TRO."[49]  Further, in a section

titled "Declaratory Judgment as to all Defendants," plaintiff adds to his request for declaratory

relief a request that the Court "find[] non-compliance with the TRO" and determine that "the

Substitute Trustees Deed [is] void or voidable."[50]

### III.  STANDARDS

#### A.    Amendment of Complaint

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides, in sum, that a "party may

amend its pleading once as a matter of course within" 21 days after serving it or, "if the pleading

is one to which a responsive pleading is required, within 21 days after service of a responsive

pleading or 21 days after service of a Rule 12(b), (e), or (f), motion, whichever is earlier."[51]  Rule

15(a)(2) addresses all other amendments.[52]  Although Rule 15(a)(2) provides that leave shall be

---

[48]  Third amended petition at 4, 5.

[49]  Id. at 14.

[50]  Id. at 17.

[51]  FED. R. CIV. P. 15(a)(1)(A), (B).  The Advisory Committee Notes state that the 21-day periods are not cumulative.  For example, "if a responsive pleading is served after one of the designated motions is served, there is no new 21-day period."  Advisory Committee Notes on FED. R. CIV. P. 15 (2009 Amendments).

[52]  Rule 15(a)(2) provides:
In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires. FED. R. CIV. P. 15(a)(2).

freely given "when justice so requires,"[53] leave is not automatic.[54]  Whether to grant leave "lies within the sound discretion of the district court."[55]  "In exercising its discretion, the Court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."[56]

**B.      Statement of a Claim Upon Which Relief Can Be Granted**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, in turn, requires the plaintiff to state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.[57]  When considering whether the plaintiff has failed to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the

---

[53]  FED. R. CIV. P. 15(a)(2).

[54]  In re Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert. denied, 519 U.S. 1057, 117 S.Ct. 686 (1997).  See Bakner, 2000 WL 33348191, at * 14 (citing Geiserman v. McDonald, 893 F.32d 787, 790 (5th Cir. 1990)).

[55]  Bakner, 2000 WL 33348191, at * 14 (citing Louisiana v. Litton Mortg. Co., 50 F.3d 1298, 1302-03 (5th Cir. 1995)).

[56]   Id. (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).  Southmark Corp., 88 F.3d 314-15).

[57]  FED. R. CIV. P. 12(b)(6).

plaintiff.'"[58]  To withstand a Rule 12(b)(6) motion, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[59]

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring "a short plain statement of the claim showing that the pleader is entitled to relief."[60]  Although "heightened fact pleading of specifics"[61] may not be adopted when not authorized by the Federal Rules of Civil

---

[58]  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999); Chehardy v. Allstate Indem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008)), cert. denied sub nom, Xavier Univ. of La. v. Travelers Cas. Prop. Co. of Am, 552 U.S. 1182, 128 S. Ct. 1230 and Chehardy v. Allstate Idem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008).

In Katrina Canal Breaches, 495 F.3d at 205, n.10, the United States Court of Appeals for the Fifth Circuit acknowledged the United States Supreme Court's abrogation of the "no set of facts" standard for determining the adequacy of a pleading in Bell Atlantic Corp. v. Twombly, a Sherman Act case:
> We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint.  See, e.g., Martin K. Eby Constr., 369 F.3d at 467 (quoting Jones, 188 F.3d at 324).  This standard derived from Conley v. Gibson, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).  But recently in Bell Atlantic, the Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S.Ct. at 1968-69.

[59]  Id. at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570-72, 127 S. Ct. 1955, 1974 (2007)).

[60]  FED. R. CIV. P. 8(a)(2).

[61]  Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.

Procedure,[62] the complaint taken as a whole "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory"[63] and a plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility.  More specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause  of action will not do."[64]  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."[65]  Although the Supreme Court in Twombly stressed that it did not impose a probability standard at the pleading stage, nevertheless, the allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief.[66]

---

[62]   See, e.g., Fed. R. Civ. P. 9(b) (allegations of fraud or mistake to be stated with particularity); Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508, 122 S. Ct. 992 (2002) ("[A] complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792[, 93 S. Ct. 1817, 36 L.Ed.2d 668] (1973).").

[63]   Twombly, 550 U.S. at 562, 127 S. Ct. at 1969 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

[64]   Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (2007)).

[65]   Id. at 555, 127 S. Ct. at 1965 (as quoted in Katrina Canal Breaches, 495 F.3d at 205).

[66]   Id. at 557, 127 S. Ct. at 1966.  See also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 1953 (2009) (rejecting the argument that the Twombly plausibility pleading standard applied only in antitrust cases and expressly holding the standard applies "all civil actions.").

When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the factual allegations contained in the complaint.[67]  But, a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," which will not defeat a Rule 12(b)(6) motion to dismiss.[68]  In Iqbal, the Court formalized a two-pronged approach to apply the underlying jurisprudential principles of Twombly.[69]  The first prong required the Court to separate factual allegations from legal conclusions.  The Court dismissed those allegations deemed to be "conclusory" on the basis that bare legal conclusions are not entitled to the privilege that all well-pleaded facts be taken as true at the motion to dismiss stage.[70]  The second prong then applied the plausibility test to the remaining allegations.[71]  That

---

[67]  550 U.S. at 555, 127 S. Ct. at 1965 (citing Swierkiewicz, 534 U.S. at 508, n.1, 122 S. Ct. at 996, n.1; Neitzke v. Williams, 490 U.S. 319, 326-37, 109 S. Ct. 1827, 1832 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

[68]  Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

[69]  Twombly, 556 U.S. at 677-79, 129 S. Ct. at 1949-50.

[70]  Id.  Iqbal illustrated its analysis of the first prong as follows:
We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.  Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint ¶ 96, App. to Pet. for Cert. 173a-174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, id., ¶ 10, at 157a, and that Mueller was "instrumental" in adopting and executing it, id., ¶ 11, at 157a. These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S. Ct. 1955, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Feeney, 442 U.S., at 279, 99 S. Ct. 2282.  As such, the allegations are conclusory and not entitled to be assumed true. Twombly, supra, 550 U.S., at 554-555, 127 S. Ct. 1955. To be clear, we do not reject these bald allegations on the ground that they are

14

two-pronged approach is now the standard for evaluating the plausibility of a complaint under

Rule 8(a)(2).

## IV.  ANALYSIS

**A.      Threshold Issue: Plaintiff's "Live" Pleading at Time of Removal**

A threshold question is whether plaintiff's second or third amended petition is plaintiff's

"live" pleading.  Plaintiff filed his second amended petition in state court on May 14, 2014, two

weeks before Freddie Mac filed its notice of removal in this Court on May 27, 2014.  Plaintiff

filed his third amended petition in state court one day after the removal petition was filed in this

Court.[72]  Defendants contest the consideration of plaintiff's third amended petition as plaintiff's

"live" pleading because: (a) it was filed after the filing of the notice of removal and Freddie

Mac's May 27, 2014 removal divested the state court of jurisdiction,[73] and (b) it is unsigned by

an attorney.[74]  In response, plaintiff argues that the third amended petition should be considered

to be plaintiff's "live" pleading as of the time of the removal even though plaintiff filed it "[t]he

---

unrealistic or nonsensical.  We do not so characterize them any more than the Court in <u>Twombly</u> rejected the plaintiffs' express allegation of a " 'contract, combination or conspiracy to prevent competitive entry,'" <u>id.</u>, at 551, 127 S. Ct. 1955, because it thought that claim too chimerical to be maintained.  It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

<u>Id.</u> at 680-81, 129 S. Ct. at 1951.

[71]  <u>Id.</u> (explaining that although the Court must "take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

[72]  <u>See</u> text at notes 11-14, <u>supra</u>.

[73]  <u>Id.</u>

[74]  Docket no. 10 at 3.

day after removal" because plaintiff filed the third amended petition in state court "prior to Plaintiff's counsel knowing about the removal."[75]

Section 1446(d) of Title 28, United States Code provides:

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

When interpreting § 1446(d), the United States Court of Appeals for the Fifth Circuit has held that removal to federal court is "effected" once the removing party (1) files the notice of removal in federal court, (2) gives written notice to all adverse parties, and (3) files a copy of the notice with the clerk of the state court, which can include constructive notice to the state clerk's office.[76]

In this case, defendants have shown that plaintiff had notice of the removal on May 27, 2014, because Mr. Roig, plaintiff's attorney of record, was served electronically on that day.[77]

---

[75] Docket no. 11 at 1.

[76] Dukes v. South Carolina Ins. Co., 770 F.2d 545, 547 (5th Cir. 1985) ("In Medrano v. Texas, 580 F.2d 803 (5th Cir. 1978), we held that the state court retains jurisdiction until the state court receives actual or constructive notice of the removal. Constructive notice in this case was accomplished by notice to counsel for Dukes and Barber and by their subsequent participation in the state court action."); Adair Pipeline Co. v. Pipeliners Local Union, 325 F.2d 206, 207 (5th Cir. 1963) (copy of removal petition presented to state court during a hearing, rather than filed with state district clerk provided constructive notice of the removal to state court).

[77] Docket no. 1 at 4. See TEX. R. CIV. P. 8 (the attorney whose name appears first on a party's pleading is the "attorney in charge" unless another attorney is specifically designated; the attorney in charge, also called "lead counsel," is responsible for the lawsuit; all communications from the court or other attorneys must be sent to the attorney in charge). The state court docket sheets do not show that Mr. Roig ever withdrew as plaintiff's counsel or was replaced as the "attorney in charge" for plaintiff while plaintiff's case was pending in state court. Rather, after removal, on June 5, 2014, Mr. Roig filed a motion to withdraw as an attorney for plaintiff, a request that was granted by the Court on June 26, 2014. Docket nos. 5, 8.

Defendants also have provided the state court docket sheets, which indicate that the state court actually docketed Freddie Mac's notice of removal on May 27, 2014.[78]  The third amended petition was filed in state court the next day, on May 28, 2014, by another attorney for plaintiff, Mr. Grubbs.  Although there is no evidence to show Mr. Grubbs received direct notice of the filing of the notice of the removal, Mr. Grubbs is deemed to have constructive notice of the removal through defendants' action of serving the notice of removal on plaintiff's "attorney in charge"[79] and the docketing of defendants' notice of removal by the state court on May 27, 2014.  Plaintiff has presented no evidence or authority to show plaintiff did not receive notice of defendants' notice of removal when it was served on plaintiff's attorney in charge on May 27, 2014.  Plaintiff also has presented no evidence to show the state court did not receive notice of defendants' removal of plaintiff's state case on May 27, 2014, the day on which the notice was docketed in the state court's docket.  Based on the facts in the record, by the time Mr. Grubbs filed the third amended petition on May 28, 2013, each of the three statutory prerequisites to effect the removal had occurred.[80]  Therefore, plaintiff's third amended petition, failed after the

---

[78]  Docket no. 14, exhibit 1 at 5.

[79]  See note 77, supra.

[80]  To the extent plaintiff may be arguing the state court did not receive notice of removal before Mr. Grubbs filed the third amended petition, in addition to the state docket sheet that shows the removal notice was filed on May 27, 2014, plaintiff has not rebutted a presumption that defense counsel fulfilled "their duty as officers of the court to advise the state court of the removal."  Dukes, 770 F.2d at 547 ("[i]n the absence of proof that they failed in their duty as officers of the court to advise the state court of the removal . . ., we presume that they properly discharged their duty to the state court and advised the court of the removal and of their participation in the conduct of the federal litigation . . .).

state court lost jurisdiction over plaintiff's case, cannot be considered plaintiff's "live" pleading as of the time of removal.

In any event, even if plaintiff's third amended petition were to be considered to have been filed in state court prior to the effectuation of Freddie Mac's removal of plaintiff's case, as plaintiff argues, the pleading cannot be considered on the merits in this Court.  Rule 11(a) of the Federal Rules of Civil Procedure provides in part:

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name . . . .  * * * The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."[81]

The copy of plaintiff's third amended petition filed in state court on May 28, 2014, was not signed by any attorney for plaintiff.  Defendants provided plaintiff written notice of the defect at least by July 3, 2014, when they filed their response to plaintiff's motion for leave to amend.[82] Since that time, plaintiff has not produced a signed and file-stamped copy of the third amended petition to show that plaintiff filed a signed copy of the pleading in state court on May 28, 2014.[83] Therefore, even if plaintiff's third amended petition was filed, or should be considered to have been filed, before defendants' removal of plaintiff's state case was "effected," plaintiff's third

---

[81]  See also TEX. R. CIV. P.  45(d) (pleadings must be in writing "and signed by the party or his attorney and either the signed original together with any verification or a copy of said original and copy of any such verification shall be filed with the court").

[82]  Docket no. 10 at 3.

[83]  See note 10, supra (addressing the post-filing service of a signed, filed copy of plaintiff's second amended petition).

amended petition must be stricken[84] and cannot be considered to be plaintiff's "live" pleading in this Court.

In sum, plaintiff's "live" pleading at the time the removal was "effected" was plaintiff's second amended petition. Alternatively, even if the Court were to consider that plaintiff's third amended petition was filed in state court before the removal was "effected," as plaintiff argues, the Court cannot consider it to be the operative pleading defining plaintiff's claims and must strike it, as plaintiff has not produced a record to show a signed copy of that document was filed in state court prior to removal (or in this Court after removal). Accordingly, this report will address defendants' motion to dismiss as it applies to plaintiff's second amended petition. Prior to doing so, the following section of the report addresses plaintiff's motion to file an amended complaint in this Court—filed after defendants' motion to dismiss and to address and "moot" the motion.

## B.    Amendment of Complaint

After defendants' filed their motion to dismiss, plaintiff filed a motion for leave to filed a fourth amended complaint.[85] A comparison of plaintiff's proposed fourth amended complaint, tendered as a copy to his motion to amend, with plaintiff's second amended petition indicates that plaintiff seeks to make four key changes. Specifically, the proposed fourth amended complaint:

---

[84]    See K-Beech, Inc. v. Does, 1-29, 826 F. Supp.2d 903, 905 (W.D.N.C. 2011) (striking unsigned motion to dismiss after defendant was informed of lack of signature and did not correct error within 21 days); Azamar v. Stern, 275 F.R.D. 1, 8 (D.D.C. 2011) (striking unsigned counterclaims and third party complaint when attorney was notified of defect and did not correct error promptly).

[85]    Docket no. 9.

1.      adds to the allegations regarding proposed injunctive relief that "the foreclosure occurred in violation of a TRO;"[86]

2.      adds to the allegations regarding proposed declaratory relief that an OCC consent order "estopped" defendants from foreclosing on the Property and the deed is "void or voidable" because of "non-compliance with the TRO"[87]

3.      deletes the breach of contract claim; and

4.      adds causes of action for:
        a. wrongful foreclosure, based on BANA's alleged promise to plaintiff that "foreclosure would not take place as long as they were in the modification program" and "due to the foreclosure occurring while a temporary restraining order was in place;"[88]
        b. negligent misrepresentation, based on BANA's alleged promise that "[plaintiff's home would not be foreclosed on;"[89] and
        c. violations of the Texas Fair Debt Collection Practices Act ("TDCPA").[90]

Plaintiff asserts his proposed fourth amended complaint "legitimately moots . . . [defendants' pending motion to dismiss] . . . and is not a delay tactic but a legitimate attempt to state viable causes of action and to file the pleadings that should have been removed based on the 3rd Amended [petition] filed in state court."[91]

        Plaintiff initiated this case in state court more than eight months ago, on December 2, 2013.  In the first six months of the pendency of the case, plaintiff filed (or attempted to file) four

---

[86]  Fourth amended complaint at 14 (the fourth amended complaint is not paginated in the original; the page numbers referenced are those assigned by the CM/ECF system).  This basis for injunctive relief was also asserted in plaintiff's un-signed third amended petition.

[87]  Id. at 18.

[88]  Id. at 14-15.

[89]  Id. at 16-17.

[90]  Id. at 15-16.

[91]  Docket no. 9 at 4.

versions of his complaint—the original petition, first amended petition, second amended petition, and third amended petition.  Yet, without citation to authority to show this clear record can be disregarded, plaintiff's motion to amend asserts "this is the first attempt to amend" within the meaning of Rule 15 of the Federal Rules of Civil Procedure.[92]  Plaintiff suggests he can file an amended pleading "as a matter of course" within twenty-one days of the removal,[93] regardless of his prior amendments and the literal terms of Rule 15(a), but again cites no authority for the proposition.  Yet, another passage in the motion to amend appears to concede Rule 15(a) applies and plaintiff cannot file his fourth amended complaint "as a matter of course."[94]  The Court concludes plaintiff no longer has a right to amend "as a matter of course" and must seek leave of Court to amend.

Thus, the Court examines plaintiff's explanation for the need to amend, to determine if "justice so requires" the amendment.  Plaintiff emphasizes "[t]he attempt to amend is being filed less than a month after removal" and asserts the fourth amended complaint "is a substantial change to the prior pleadings in terms of causes of action and facts,"[95] apparently to show diligence in seeking to amend and the importance of the proposed amendments.  But, other than

---

[92] Id. at 2.

[93] Id.

[94] Id. ("Defendant's 12(b)(6) was filed on June 3, 2014.  21 days from that date would be on June 24, 2014, so it does appear that this request would need leave or Court pursuant to Rule 15(a)(2).").

[95] Id. at 3.  As discussed, the main difference between the second and third amended petitions is that the third amended petition includes requests for injunctive and declaratory relief based on an alleged violation of the TRO *preventing* foreclosure entered by the state court on December 2, 2013; elsewhere plaintiff agrees the Property was sold on December 3, 2013, such that *preventing* foreclosure is no longer possible.  See third amended petition at 4, 5 and 14.

21

noting the fourth amended complaint does not include a claim for breach of contract,[96] and stressing the changes will moot defendants' motion to dismiss, plaintiff provides no explanation for why the changes are "substantial," why they are needed, or why plaintiff did not make the changes sooner—each factors helpful to determining whether there has been undue delay. Plaintiff twice cites the Fifth Circuit's ruling in Fahim v. Marriott Hotel Services,[97] for the proposition his request for leave to amend should be freely granted, especially because the amendment has been sought before the expiration of any scheduling order deadline regarding motions to amend.[98]  But, nothing in Fahim implies that when the "good cause" standard for reopening an expired scheduling order deadline does not apply, plaintiff is not necessarily required to explain why he wants to amend (for an amendment not made as "a matter of course") or that plaintiff's failure to offer such an explanation can be dispositive.[99]

Given the age of plaintiff's case, that the proposed amendment is plaintiff's fifth proffered version of plaintiff's complaint, that the facts supporting each of the claims asserted in the fourth amended complaint apparently were known to plaintiff since early December 2013, and that plaintiff has failed to explain why he did not earlier pursue the amendments at issue (in

---

[96]  Plaintiff makes clear the pleading "eliminates the breach of contract claim" because plaintiff "agree[s] that the facts in the case cannot support such cause."  Docket no. 11 at 1.

[97]  551 F.3d 344, 348 (5th Cir. 2008).  See also id. ("We review the district court's denial of a motion to amend for abuse of discretion.  Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 177 (5th Cir.2007).").

[98]  Docket no. 7 at 2; docket no. 11 at 2.

[99]  See Fahim, 551 F.3d at 348 (the Court repeatedly comments on plaintiff's failure to explain the need for the amendment: "Fahim offered no explanation for her untimely request;" "Fahim . . . offered no explanation for her failure to timely move for leave . . .;" and, again, "Fahim offered no explanation for her untimely request.").

the three other amended petitions he filed after December 2013), the record shows plaintiff inappropriately delayed in seeking to file the fourth amended complaint.  Plaintiff's delay in amending has prejudiced defendants as, if plaintiff's fourth amended complaint were to be filed, defendants would be required to prepare and file another motion to dismiss the new version of plaintiff's complaint (or the portions of the new pleading that do not reallege what is asserted in plaintiff's second amended petition).[100]

Further, in addition to the concern there has been undue delay in seeking to further amend, an examination of the changes to plaintiff's claims proposed in the fourth amended complaint shows the proposed amendments are futile.[101]  Plaintiff's proposed fourth amended complaint seeks to add causes of action for wrongful foreclosure, negligent misrepresentation, and TDCPA violations, as well as a request for declaratory relief based on alleged violations of the OCC consent order.  As a threshold matter, each of the new claims is premised on defendants' alleged failure to adhere to HAMP guidelines or the OCC consent order.  But, plaintiff does not allege he is a party to, or a beneficiary of, the HAMP guidelines or OCC consent order.  Plaintiff otherwise has not provided a particularized statement of facts or citation

---

[100]  See Overseas Inns S.A. P.A. v. United States, 911 F.2d 1146, 1151 (5th Cir. 1990) ("To grant . . . leave to amend is potentially to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint.").

[101]  "A proposed amendment is futile if 'the amended complaint would fail to state a claim upon which relief can be granted.'" Buchanan v. U.S. Bank N.A., No. H-13-3525, 2014 WL 3045107, at *3 (S.D.Tex. Jul. 3, 2014) (quoting Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000)).

to authority to show plaintiff has standing to assert claims with respect to defendants' alleged obligations under either HAMP or the OCC consent order.[102]

Further, the new causes of action asserted in plaintiff's proposed fourth amended complaint do not state claims upon which relief may be granted.[103]  Plaintiff's proposed cause of action for wrongful foreclosure alleges that foreclosure was improper because it "occurr[ed] while a temporary restraining order was in place."[104]  As a matter of law, foreclosure in violation of a temporary restraining order does not give rise to a cause of action for wrongful foreclosure.[105]  Plaintiff's proposed cause of action for negligent misrepresentation is legally insufficient because "[r]epresentations with regard to future loan modifications and foreclosure

---

[102]   See Shateen v. JP Morgan Chase Bank, N.A., 519 F. App'x 320, 231 (5th Cir. 2013) ("[Plaintiff] has no standing to enforce consent decrees to which she is not a party."); Phillips v. JP Morgan Chase Bank, N.A., No. 14-CA-054-SS, 2014 WL 850721, at *2 (W.D.Tex. Mar. 4, 2014) (J. Sparks) (no standing to enforce consent decree);  Weston v. Wells Fargo Bank, N.A., No. A-14-CA-51-SS, 2014 WL 811546, at *4 (W.D.Tex. Feb. 28, 2014) (J. Sparks) (no standing to enforce consent decree or HAMP violations);  King v. HSBC Bank USA, N.A., No. SA-12-CV-592-XR, 2012 WL 3204190, at *3 (W.D. Tex. Aug. 3, 2012) (J. Rodriguez) (no standing to assert HAMP violations); Bagala v. Bank of America, No. H-13-0160, 2013 WL 4523562, at *2 (S.D.Tex. Aug. 27, 2013) (no standing to enforce consent judgment); Nolasco v. CitiMortgage, Inc., No. H-12-1875, 2012 WL 3648414, at *4 (S.D.Tex. Aug. 23, 2012) (no standing to enforce HAMP guidelines).

[103]   For the purposes of assessing the "futility" of plaintiff's proposed fourth amended complaint, the Court properly focuses on the changes plaintiff seeks to make through the proposed pleading.  To be clear, to the extent the proposed fourth amended complaint re-asserts claims asserted in plaintiff's "live" pleading, his second amended petition, as discussed in a following section of this report, the claims are subject to dismissal for the same reasons the claims are subject to dismissal in the second amended petition.

[104]   Fourth amended petition at 15.

[105]   Pickens v. U.S. Bank Nat'l Ass'n., No. 3:12-CV-2210-O-BK, 2013 WL 866171, at *6 (N.D. Tex. Jan. 8, 2013) ("A foreclosure sale in contravention of a TRO is not a defect in the foreclosure proceeding itself, and consequently, cannot give rise to a wrongful foreclosure cause of action.").

(or forebearance from foreclosure) 'constitute promises of future action rather than representations of existing fact' and cannot support a negligent misrepresentation claim."[106] Plaintiff's TDCPA claims are "bare assertions" that amount to nothing more than a "formulaic recitation of the elements" and do not state a claim for relief.[107]  Further, contrary to plaintiff's argument, this Court's decision in Kennedy v. Wells Fargo Bank, N.A., does not demonstrate plaintiff's proposed fourth amended complaint states a claim for relief under the TDCPA.[108] Chief Judge Biery's order in Kennedy denying defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was based on  defendant's alleged refusal to accept mortgage payments while representing "'it would offer to collect monthly payments under the HAMP application process at some near future date.'"[109] But, here, plaintiff does not allege that defendants promised forebearance of payments.  To the contrary, plaintiff alleges that "[a]lthough Plaintiff reached out to the Defendant on several occasions to obtain an alternatives

---

[106]   Cooper v. Wells Fargo Bank, N.A., No. 4:11-CV-440, 2014 WL 3671204, at *7 (E.D.Tex. Jul. 27, 2014) (quoting Thomas v. EMC Mortg. Corp., 449 F. App'x 337, 342 (5th Cir. 2012)).  For the same reason, plaintiff fails to state a claim for wrongful disclosure, as one of the factual allegations plaintiff makes in support is: "Plaintiffs were (sic) repeatedly advised that . . . foreclosure would not take place as long as they (sic) were in the modification program."  Fourth amended complaint at 14.  Further, plaintiff does not allege that he was, in fact, "in the modification program" when foreclosure occurred.

[107]   Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (2007)).  See fourth amended complaint at 15-16.

[108]   No. SA-11-CA-957-FB, docket no. 21 (W.D.Tex. Oct. 23, 2012).

[109]   Id. at 2 (citation omitted).

(sic) to foreclosure, defendant failed to respond in any meaningful way except to proceed with the foreclosure in violation of the . . . [OCC consent order]."[110]

Plaintiff's proposed fourth amended complaint also seeks to add to the request for injunctive relief (to enjoin eviction of plaintiff from the Property) that "the foreclosure occurred in violation of a TRO."[111]  Injunctive relief is not itself a cause of action, but an equitable remedy predicated on a viable cause of action.[112]  Because plaintiff's cause of action for wrongful foreclosure cannot be sustained as a matter of law, this proposed added allegation cannot support a request for injunctive relief.[113]  Accordingly, permitting the plaintiff to amend his complaint to include the allegation would not support a viable claim upon which relief could be granted, and the proposed amendment is futile.  Further, plaintiff seeks to add the same factual allegations concerning the TRO to the section of the fourth amended complaint concerning declaratory relief.  Declaratory relief, like injunctive relief, is predicated on a viable cause of action.

---

[110]  Fourth amended petition at 12.  Confusingly, plaintiff also alleges, "Plaintiffs were (sic) repeatedly advised that . . . foreclosure would not take place as long as they (sic) were in the modification program."  Id. at 14.  Plaintiff does not allege that defendants refused to accept payments or advised him not to make payments, or that he was in a modification program at the time of foreclosure.

[111]  Id. at 14.  This basis for injunctive relief was also asserted in plaintiff's un-signed third amended petition.

[112]  Puente v. CitiMortgage, Inc., No. 3:11-CV-2509-N, 2012 WL 4335997, at *7 (N.D.Tex. Aug. 29, 2012)

[113]  See Carrillo v. Bank of America, N.A., No. H-12-3096, 2013 WL 1558320, at *1, n.1 (S.D.Tex. Apr. 11, 2013).  Again, plaintiff's proposed fourth amended complaint, as his second amended petition, does not assert a claim for damages based on the sale of the Property after the signing of the TRO.

Therefore, the proposed additional factual allegation in plaintiff's request for declaratory relief would not support any viable cause of action, and is futile.

In sum, plaintiff is not entitled to amend "as a matter of course," but must explain why an amendment is timely and appropriate.  Plaintiff has not explained why he did not earlier seek to amend to make the proposed changes as each of the changes appear to be based on factual matters known to plaintiff from the inception of the case in state court.[114] Significantly, plaintiff also has not demonstrated the amendments proposed in the fourth amended complaint are not futile.[115]  Accordingly, plaintiff's motion to file a fourth amended complaint is **denied**.

As a final matter, the Court addresses plaintiff's failure to respond to defendants' motion to dismiss as it relates to plaintiff's motion for leave to amend.  In the concluding paragraph in both his motion to amend and his reply, plaintiff asks for more time to respond to defendants' motion to dismiss in the event the Court does not grant plaintiff's motion for leave to amend.[116] On June 17, 2014, Chief Judge Biery ordered plaintiff to file a response to defendants' motion to dismiss on or before July 1, 2014.[117]  Plaintiff has not provided any authority in support of his apparent position that the pendency of his motion for leave to amend tolls his court-ordered date

---

[114] In re Southmark Corp., 88 F.3d 311, 315-16 (5th Cir. 1996) (court can consider whether facts in amended complaint were known to party when original complaint was filed).

[115] National Wrestling Coaches Ass'n v. Department of Educ., 366 F.3d 930, 945 (D.C.Cir. 2004).

[116] Docket no. 9 at 3 ("Wherefore, Plaintiff requests and (sic) order mooting the Defendant's Motion to Dismiss.  If the Court believes that the Motion is not muted (sic) by the amendment then Plaintiff would respectfully requests (sic) an additional three days to respond."); docket no. 11 at 3 ("In the event the Court does not grant the motion[,] Plaintiff would re-urge the Court [to] grant an extension to respond to the Defendan[ts'] motion to dismiss.").

[117] Docket no. 7 at 1.

to respond to defendants' motion to dismiss.[118]   Further, in confusing passages in plaintiff's motion to amend and reply, plaintiff: (a) notes that defendants' motion to dismiss is directed at plaintiff's second amended petition, (b) asserts that his third amended petition (that is, the unsigned petition stricken by the Court) "removed" [e]very . . . cause of action" alleged in plaintiff's second amended petition *other than* the causes of action for "breach of contract and quiet title on the HAMP violations and the violation of the TRO and negligence actions as to the trustee," and (c) represents that his proposed fourth amended complaint "now removes the breach of contract claim."[119]   But, under these representations, plaintiff is conceding that causes of action asserted in the second amended petition have indeed been reasserted in the proposed fourth amended complaint (to include, as described by plaintiff, plaintiff's claims for "quiet title on the HAMP violations and the violation of the TRO and negligence actions as to the trustee").   Thus, although plaintiff "says" his proposed fourth amended complaint will "moot" defendants' motion to dismiss, the aspects of defendants' motion that seeks to dismiss those claims in plaintiff's second amended petition that have been realleged in the proposed fourth amended complaint demonstrably are not moot, even under plaintiff's own argument.   Stated differently, defendants'

---

[118]   The Court is not inclined to approve a procedure in which, instead of filing a separate motion for more time—expressly and clearly asking to delay the response until after the ruling on a motion to amend—a party can include a one-sentence reference to a request for more time in the "Wherefore clause" to effectively delay the need to respond to the motion to dismiss for at least 7-14 more days (until the opposing party has the opportunity to respond to the motion to amend) or for many more days (until the Court rules on the motion to amend).   In any event, in this case, because the ruling on the motion to amend is closely related to defendants' motion to dismiss, the Court includes the ruling on the motion to amend in this report, which also recommends a ruling on defendants' motion to dismiss.   Thus, plaintiff will have the opportunity to be heard on the merits of defendants' motion to dismiss before the District Court enters the final ruling on the motion to dismiss.

[119]   See docket no. 9 at 2; docket no. 11 at 2 (emphasis in original deleted).

28

motion to dismiss can fairly and appropriately be read to apply to significant portions of plaintiff's proposed fourth amended complaint.  Plaintiff provides no reason why he is not ready to show why those realleged causes of action should not be dismissed, not only to respond to defeat defendants' request they be dismissed but to show why an amendment to reallege them is not "futile."  Thus, to the extent plaintiff's two sentences, one in his motion and one in his reply, should be addressed as motions to extend time to respond to defendants' motion to dismiss, the requests are **denied**.[120]

## C.     Motion to Dismiss

Defendants' motion to dismiss seeks dismissal of each of the claims asserted against them in plaintiff's "live" pleading, his second amended petition.  Each claim understood to be fairly asserted in plaintiff's second amended petition is separately addressed.

### 1.     breach of contract

Plaintiff's second amended petition asserts a cause of action against defendants for breach of contract, alleging defendants failed to provide plaintiff notice of default or opportunity to cure, or an opportunity to modify the loan agreement through HAMP or other alternatives to foreclosure.  Defendants move to dismiss plaintiff's breach of contract claim, arguing, in sum: (1) "[b]y Plaintiff's own concession, BANA acted in precise accordance with the Note and Deed of Trust by providing ample notice and opportunity to cure;"[121] and (2) plaintiff did not comply with the deed of trust's "one contractual option" for reinstatement, set forth in paragraph 19 of

---

[120]   Again, plaintiff has the opportunity to show why defendants' motion to dismiss should not be granted within the time for filing objections to this report and before the District Court enters the final ruling on the motion to dismiss.  See note 118, supra.

[121]   Docket no. 4 at 7.

the deed of trust;[122] and (3) plaintiff's own breach of the note and deed of trust by failing to make mortgage payments excuses any performance on defendants' part.[123]

In his motion for leave to amend, plaintiff concedes that "the facts in the case cannot support" his breach of contract claim.[124] The Court agrees with defendants that the plain language of the reinstatement provision of the deed of trust articulates only one means of reinstating the loan, and does not require defendants to offer plaintiff a "range of default-curing options."[125] Further, the Court notes that, interpreting identical deed language, the United States District Court for the Southern District of Texas rejected the argument that the deed of trust incorporated any right to modification under HAMP.[126] Accordingly, defendants' motion to dismiss plaintiff's cause of action for breach of contract should be **granted**.

### 2.    declaratory judgment

Plaintiff's second amended petition asserts a "cause of action" against defendants for "declaratory judgment," seeking a declaration that (a) BANA "was estopped from foreclosing"

---

[122] Id. at 8-9.  Defendants attach a copy of the deed of trust, note, and assignment to their motion to dismiss.  Id., exhibits B, C, D.  Because plaintiff references the deed of trust in his second amended petition and it is central to plaintiff's claims, the Court considers the deed of trust to be part of the pleadings.  Therefore,  defendants' attaching the deed of trust to their motion to dismiss does not convert defendants' motion to a motion for summary judgment.  See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

[123] Id. at 9.

[124] Docket no. 9 at 2.

[125] Second amended petition at 15.

[126] Nolasco, 2012 WL 3648414, at *4.  To confirm that the district court interpreted the very same deed language, the Court has examined the Southern District's CM/ECF record for the case. See Nolasco, No. H-12-1875, docket no. 2, exhibit A at 7 (S.D.Tex. Jun. 29, 2012).

under the OCC consent order, and (b) defendants failed to provide the proper notices and comply

with the plaintiff's "right to reinstate" the mortgage loan.[127]  The same arguments advanced by

defendants in support of plaintiff's breach of contract claim support dismissal of plaintiff's

request for declaratory relief, that is, in sum: (1) by plaintiff's own admission, BANA provided

the required notice and opportunity to cure;[128] (2) plaintiff did not comply with the deed of trust's

reinstatement provision;[129] and (3) plaintiff's own breach by nonpayment on the loan excuses any

performance by defendants.[130]  As noted in a discussion of plaintiff's breach of contract claim,

(1) plaintiff has no standing to enforce HAMP or the OCC consent order; (2) the deed of trust

does not incorporate any provisions of HAMP or the OCC consent order, nor does it obligate

defendants to offer multiple "default-curing options;" and (3) plaintiff concedes that his claim for

breach of contract, including the claim that defendants did not provide adequate notice or

opportunity for cure, is not supported by the facts.  Defendants' motion to dismiss plaintiff's

"cause of action" for declaratory judgment should be **granted**.

3.     **quiet title**

Plaintiff's second amended petition asserts a cause of action against BANA to quiet title

on the Property, alleging that the substitute trustee's deed is "void or voidable" because BANA

"did not comply with [the OCC consent order], Chapter 51 of the Texas Property Code and the

---

[127]  Id. at 17.

[128]  Docket no. 4 at 7.

[129]  Id. at 8-9.

[130]  Id. at 9.

31

Deed of Trust[.]"[131]  Defendants move to dismiss plaintiff's cause of action, arguing that

plaintiff's claim "is nothing more than conclusory statements and is wholly devoid of any factual

allegation," and further BANA had standing to foreclose "because as a matter of law it was the

mortgagee at the time of the foreclosure sale," and "is the holder of the Note endorsed in

blank."[132]  As discussed, plaintiff has no standing to enforce the OCC consent order.  Further, the

Court agrees that plaintiff's claim alleging failure to comply with Chapter 51 of the Texas

Property Code comprises no more than conclusory statements void of sufficient factual

allegation.  Plaintiff does not identify in his second amended petition which specific provision of

the extensive Chapter 51[133] is alleged to be violated, nor does he identify any facts to support a

violation.  To the extent plaintiff alleges BANA had no standing to foreclose because the

signature on the assignment is a stamped signature that conflicts with the notary's affirmation

that the signer personally appeared and signed the document, plaintiff's argument repeatedly has

been rejected by the Fifth Circuit and district courts.[134]  In any event, BANA had standing to

---

[131] Second amended petition at 18.

[132] Docket no. 4 at 5.

[133] See TEX. PROP. CODE §§ 51.0001 et seq. (Vernon 2007).

[134]  Reinagel v. Deutsche Bank Nat'l Trust Co., 735 F.3d 220, 227-28 (5th Cir. 2013); Jimenez v. Deutsche Bank Nat. Trust Co., 552 F. App'x 379, 380 (5th Cir. 2014); Richards v. U.S. Bank Nat. Ass'n, No. A-13-CA-600-SS, 2014 WL 1767711, at *2 (W.D.Tex. May 1, 2014) (J. Sparks); Gallegos v. JP Morgan Chase Bank, No. SA-13-CA-814-FB, docket no. 28 at 6; docket no. 33 (W.D.Tex. May 27, 2014) (plaintiffs lack standing to assert forgery claim to challenge assignment); Reginaldo v. Nationstar Mortg., LLC, No. SA-13-CA-326, docket no. 33 at 2 (W.D.Tex. Dec. 4, 2013) (J. Hudspeth) (granting lender's motion for summary judgment on plaintiffs' request for declaratory judgment, U.C.C. violations and action to quiet title because "Plaintiff… may not challenge Defendants' authority to foreclose on the Property on the basis of [a] purported lack of authority to assign the deed of trust.").

foreclose as a holder of the note, which was endorsed in blank.[135]  Defendants' motion to dismiss plaintiff's cause of action to quiet title should be **granted**.

**4.  conclusion**

For the reasons discussed, defendants' motion to dismiss each of the claims asserted against them in plaintiff's second amended petition should be **granted** and each such claim should be **dismissed**.  Because plaintiff has amended, or attempted to amend, his original petition four times, plaintiff's claims against defendants should be **dismissed with prejudice**.[136]

## V.  ORDER AND RECOMMENDATIONS

Based on the foregoing discussion:

- **it is ordered** that:

    - plaintiff's motion for leave to amend pleadings[137] is **DENIED**;

    - plaintiff's third amended petition[138] is **STRICKEN**;

---

[135]  See Kiggundu v. Mortg. Electronic Registration Systems Inc., 469 F. App'x. 330, 331-32 (5th Cir. 2012) ("Because the note was endorsed in blank and the [bank] was in possession of the note, under Texas law, the [bank] was entitled to collect on it."); L'Amoreaux v. Wells Fargo Bank, N.A., No. 13-50744, 2014 WL 2309960, at *3 (5th Cir. May 30, 2014).

[136]  Setzer v. Rubin, No. CIV. A-98-CA-485-JN, 1998 WL 920397, at *4 (W.D.Tex. Nov. 4, 1998) (J. Nowlin) (holding "[l]eave to amend upon dismissal is not automatic" and would be futile "because the deficiencies of the complaint could not be cured by amendment."); St. Germain v. Howard, 556 F.3d 261, 264 (5th Cir. 2009) (finding district court committed no error in denying opportunity to amend after granting motion to dismiss because "plaintiffs had several opportunities to state their best case."); Price v. Pinnacle Brands, Inc., 138 F.3d 602, 608 (5th Cir. 1998) (affirming denial of leave to amend pleading after dismissal of claims where plaintiffs "had three opportunities to articulate their damage theory" and district court determined defendant "should not be subjected to any further costs of litigation in this lawsuit.").

[137]  Docket no. 9.

[138]  Id., exhibit 1.

- to the extent plaintiff requests an extension of time to respond to defendants' motion to dismiss,[139] the request is **DENIED**; and

● **it is recommended** that:

- defendants' motion to dismiss for failure to state a claim[140] be **GRANTED** and plaintiff's "live" pleading, plaintiffs' second amended petition, should be **DISMISSED with prejudice**; and

- any other requests for relief not expressly granted be **DENIED**.

If Chief Judge Biery accepts the recommendations in this report and does not set aside the other rulings, plaintiff's claims against Robert Aguilar alleged in plaintiff's second amended petition will remain pending for further disposition.[141]

## VI.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to

---

[139]  Id. at 3; docket no. 11 at 3.

[140]  Docket no. 3.

[141]  The record does not reflect that Mr. Aguilar has been served with process in this case. See FED.R.CIV.P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Through this report, **plaintiff is hereby provided notice that, absent a subsequent ruling from the Court, the Court will dismiss plaintiff's claims against Mr. Aguilar on a date after September 15, 2014, without further notice to plaintiff** (based on an assessment the 120-day time period for plaintiff to accomplish effective service of process on Mr. Aguilar began to run on May 14, 2014, the day on which plaintiff first named Mr. Aguilar as a defendant and will expire on September 15, 2014).

any party not represented by an attorney registered as a Filing User.  As provided in  28 U.S.C. §

636(b)(1) and FED. R. CIV. P. 72(a) and (b), any party who desires to object to this Report must

**file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections

to the Report and Recommendation within **14 days** after being served with a copy, unless this

time period is modified by the District Court.  A party filing Objections must specifically identify

those findings, conclusions or recommendations to which objections are being made and the

basis for such objections; the District Court need not consider frivolous, conclusive or general

objections.  A party's failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this Report will bar the party from receiving a *de

novo* determination by the District Court.[142]   Additionally, a party's failure to file timely written

objections to the proposed findings, conclusions and recommendations contained in this Report

will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[143]

    **SIGNED** and **ENTERED** this 21st day of August, 2014.


                                    _Pamela A. Mathy_____
                                    **PAMELA A. MATHY**
                                    **UNITED STATES MAGISTRATE JUDGE**

---

[142]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[143]  Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv.
Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).